## MOLINE WAGON CO. *v.* RUMMELL and others.

*(Circuit Court, W. D. Missouri, W. D.   October. 1880.)*

1. PARTNERSHIP—PRESUMPTION OF CONTINUANCE.
    Persons or corporations dealing with a partnership once existing have a right to presume that the persons once composing the firm continue doing business in the firm name, and that the firm continues to exist; and nothing short of public or personal notice that the firm has been dissolved, will relieve the parties of their liability as partners.

2. SAME—MORTGAGE TO SECURE INDIVIDUAL DEBT.
    Where a partnership is still in existence one partner cannot mortgage the stock under his control to secure his individual debt.

3. SAME—WHEN FRAUDULENT.
    Where the object of the mortgage was to prevent, hinder, or delay creditors in the collection of their claims, such mortgage is fraudulent.

KREKEL, D. J., *(charging jury.)*   The Moline Wagon Company, on the eighth day of January, 1880, instituted suit in the Putnam county circuit court of this state against Rummell & Cutler, claiming that these two defendants constituted the firm of Rummell & Son. The suit is on four notes and on an account, all given and made in the years 1879 and 1880, and amounting in the aggregate to near $7,000. The suit came here by removal under various acts of congress authorizing non-residents to bring or remove their suits into the federal courts. In aid of their suit plaintiffs made affidavit alleging that they had good reason to believe, and did believe, that the defendants had fraudulently conveyed and assigned their property or effects so as to hinder and delay their creditors. One of the defendants, Jacob Rummell, files a plea in abatement denying the allegations of the affidavit, and the plaintiff is thereupon held to prove the existence of the facts sworn to by him. The plaintiff, the Moline Wagon Company, undertakes to establish the truth of the allegations and present their claim against Rummell & Cutler, claiming that they composed the firm of Rummell & Son, to whom the property was sold, and who obtained credit. Cutler, by failing to appear and deny the allegations in the affidavit, confesses them. It is claimed by defendant Rummell that the debt is due from Cutler alone; that the property was sold to him; and that he (Cutler) alone is responsible. If you shall find from the testimony that the property was sold by the Moline Wagon Company to Cutler alone, and not to the firm of Rummell & Son, you should find the issue for the defendant Rummell; for, unless the firm existed, the Moline Wagon Company cannot attack any of

Rummell's acts or intentions in making the mortgage. It is only upon the supposition that Rummell is liable with Cutler for the debt to the Moline Wagon Company that it has the right to inquire into the acts and doings of Rummell in dealing with what he claims to be his property. The question of the existence or non-existence of the partnership is therefore a material question.

It is not disputed that up to 1878 a partnership between Rummell & Cutler did exist; that that partnership dealt in general merchandise, including wagons, and that dealings were had between the plaintiff corporation, the Moline Wagon Company, and the firm of Rummell & Son. It is also an undisputed fact that the firm of Rummell & Son, composed of Rummell & Cutler, were equal partners up to 1878. Persons or corporations dealing with a partnership once existing have a right to presume, and the law will presume, that the persons once composing the firm continue doing business in the firm name, the firm continues to exist, and nothing short of public or personal notice that the firm has been dissolved will relieve the parties of their liability as partners. No agreement or understanding between the partners, no division of their business, can relieve either of his legal liability as to creditors who extend credit to the firm. Nor are creditors who extend credit to a firm bound to regard public rumors, even if they heard of them, if the partners continue to use the partnership name and avail themselves of the partnership credit and accept such credit. You are therefore instructed that if you shall find from the evidence that a partnership between Rummell & Cutler existed up to 1878; that thereafter, and up to the time of the creation of the debts sued on by the Moline Wagon Company, the partners of such firm continued to obtain and receive credit in the firm name, either or both of the partners are liable for the debts thus created, unless public notice of the dissolution of the partnership, or the notice of dissolution, is brought to the notice of the Moline Wagon Company. If, under this view of the law, you shall find from the evidence that plaintiff, the Moline Wagon Company, gave credit to the firm of Rummell & Son, composed of Rummell & Cutler, and the firm existed, it is liable for the debt thus contracted.

All the assets of the partnership, both merchandise, notes, and accounts, as well as all wages and property of the partnership which Cutler may have handled in his division of the partnership, as well as all notes and accounts which Cutler may have taken, together with all property of the partners, in case of insufficiency of partnership assets, are liable for debts created by the partnership. If you shall

find from the evidence that 'a partnership, under the instructions given you, existed between Rummell & Cutler at the time of the execution of the mortgage by Rummell, then (for the purposes of this case) Rummell could not use the partnership assets for payment of individual debts which Rummell may have created, and the mortgage is a fraud upon the partnership creditors.

In order to arrive at the intention of Rummell in making the mortgage your attention is directed to the mortgage itself. By its terms it is a conveyance of "the entire stock of merchandise of Jacob Rummell, * * * and all the notes and accounts of said Rummell due or to become due." Now the stock of merchandise might be seen, but no one looking at the mortgage could tell the notes and accounts conveyed. You are to arrive at a conclusion as to what object Rummell could have had in view in thus keeping out of the mortgage the amount of the notes, which must have been known to him. Again, you will determine from the evidence what was the object of Rummell in making the $1,500 note to Huiscamp when he could have named the Keokuk creditors as well as all others in the mortgage, which, if done, would in all probability have disclosed the claimed mistake of $900 in the sum ($1,500) assumed to be due the Keokuk creditors. Had Rummell any object in placing these creditors under the care of Huiscamp, as was done, and what was' that object? Your attention is also directed to the amount of debts which Rummell claims to have had at the time he made the mortgage. After ascertaining this amount you will further see what amount of property he had. If, by comparing the amount of indebtedness with the amount of property which he owned, you shall find that the indebtedness was not as large as the amount of property, you will have to determine what intention Rummell could have had in making the conveyance. You will recall the arrangement between Huiscamp and Rummell agreeing to delay the execution of the mortgage until something occurred making the execution of the mortgage desirable. Regarding the acts of Rummell and Huiscamp in dealing with the stock of goods, notes, and accounts, after the mortgage was executed, you are instructed that while the acts of the parties do not authorize the court to declare the mortgage void as a matter of law, yet you should closely look into what they did, and especially the act of Huiscamp in selling goods at retail when the mortgage provided for a public sale. Thus you may arrive at the intention of the parties by their acts. You will determine from the evidence whether the release of the notes from the mortgage was an after-thought, and

whether thereby, and the distribution of the notes among the creditors, Rummell intended to cover up and give color to a transaction not originally intended.

The large amount of property conveyed by the mortgage to secure a comparatively small debt is not itself a fraud; but such an act of conveying all his stock in trade, in face of the indisputable fact that he had sufficient notes and accounts by which he could have secured Huiscamp without making the mortgage, deserves your closest scrutiny for the purpose of arriving at the intention of Rummell in making the mortgage. If the mortgage was made by Rummell to prevent, hinder, or delay the creditors of Rummell & Son from collecting their debts, you should find the issue for the plaintiff. It was not for Rummell to determine that the firm of Rummell & Son did not owe the Moline Wagon Company, and therefore take steps to prevent, hinder, and delay them in the collection of their debt, if they had any against the firm; and if you shall find from the evidence that the object of the mortgage was to prevent, hinder, or delay them in the collection of any claim they might have against the firm, the law declares such acts fraudulent. In this case you may well see whether the maxim "acts speak louder than words" applies. As a matter of course, the explanation given by the parties of and about their acts is to be considered by you in the examination of the testimony. With the troubles between the partners we have nothing whatever to do; and such testimony in relation thereto as was allowed to be given was for the purpose only that you might be the better able to judge of the weight to be given to the testimony of Rummell and Cutler.