### NEAL v. M. E. SMITH & CO.

(Circuit Court of Appeals, Eighth Circuit. April 21, 1902.)

#### No. 1,627.

1. PARTNERSHIP—RETIREMENT OF MEMBER—NOTICE TO RELIEVE FROM LIABILITY FOR FUTURE DEBTS.

It is the duty of a retiring member of a partnership to notify all those with whom the firm has had dealings of the change in its membership, if he would avoid liability for debts subsequently contracted, and the burden rests upon him to prove such notice.

2. SAME—NOTICE TO AGENT OF CORPORATION.

A statement by a member of a mercantile partnership that he had bought out his partner, made to a traveling salesman for a corporation engaged in the wholesale business, which had previously sold goods to the firm, will not charge the corporation with notice of a change in its membership, when the business name remains the same, so as

to relieve the retiring member from liability for goods subsequently sold by it without actual knowledge of the change, where the salesman was employed solely to take orders for goods, which were sent to his employer for acceptance or rejection, and he was charged with no duty and given no authority with respect to the giving of credit or to ascertain and report changes in the membership of firms with which the corporation did business.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

George S. Wright and John N. Baldwin, for plaintiff in error.
Charles B. Keller, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This was a suit by M. E. Smith & Co., a mercantile corporation, against Martin Neal and William W. Cushman, as copartners, trading under the firm name of the Charter Oak Mercantile Company, on an open account for about $2,600, being the alleged value of goods which were sold by the plaintiff corporation to the defendant firm. The defendant Martin Neal sued out a writ of error to reverse the judgment which was recovered against him in the lower court. The defense which Neal made was that he retired from the aforesaid firm in the month of March, 1898; that notice was given to all persons with whom that firm had previously dealt of his retirement; that such notice was given to the plaintiff company; and that the goods sued for were sold after his retirement from the firm. The lower court withdrew the case from the jury, holding that there was not sufficient evidence to warrant a finding that a notice of Neal's withdrawal from the firm had been given to the plaintiff company before the goods were sold. There was testimony introduced at the trial which tended to show that on April 9, 1898, one of the plaintiff's traveling salesmen by the name of Tracey called at the place of business of the Charter Oak Mercantile Company at Charter Oak, Iowa, and solicited Cushman to order some goods; that in the course of this interview Cushman said that he had been buying most of his goods in Chicago; that if you (Tracey) can do as well by me as they do I probably might give you an order; and that he had "bought Mr. Neal out now," and was running on his "own hook." The testimony to this effect was given by the defendant Neal, who claimed to have been standing by, and to have overheard the conversation between Tracey and Cushman. The other defendant, Cushman, testified that in August, 1898, he was in the city of Omaha, where the plaintiff company did business; that Tracey took him into the plaintiff's place of business, and introduced him to a Mr. Burgess, who was the plaintiff's credit manager, as "Mr. Cushman, of Charter Oak, the 'whole cheese,' he said, of the Charter Oak Mercantile Company." The goods, as it seems, on account of which the suit was brought, were sold at various times subsequent to May 27, 1898. The sole question which arises upon the record is whether this evidence necessitated the submission of the case to the jury to determine whether Smith & Co. had received notice, prior to the sale of the goods, of Neal's withdrawal from the firm.

The plaintiff's testimony showed that Burgess, to whom Cushman claims that he was introduced as the "whole cheese," was absent from Omaha on account of ill health from the early part of August until October, 1898; that no introduction such as narrated occurred; that no information was received from Tracey or any other source that Neal had retired from the defendant firm until after the goods were sold; and that the goods in controversy were sold and credited to the defendant firm in the belief that Neal was still a partner therein. Tracey also denied that he ever informed the plaintiff company of Neal's withdrawal from the firm, or that he was ever advised of that fact himself, prior to the sale of the goods.

Under these circumstances, the point to be determined is whether the notice given to Tracey, assuming that it was so given, or that a jury would have so found, was notice to the plaintiff company, since there is no substantial evidence that notice of the alleged withdrawal was otherwise communicated to it. The statement, if it was made, that Cushman was the "whole cheese," cannot be accepted as a proper or sufficient notice of the dissolution of the firm. It might mean that or something else. And the question whether notice given to Tracey was adequate to bind the company depends, necessarily, upon the scope of his agency. The testimony on this latter point was to the following effect: That Tracey was simply a traveling salesman of the plaintiff company; that his duties were to sell goods or solicit orders; that after taking an order it had to be submitted to his employer for its acceptance or rejection; and that he had no other duties than these, or authority to make arrangements binding upon the company.

When a person retires from a firm with which he has been connected, it is his duty to advise all persons with whom the firm has previously had dealings that he has so withdrawn, if he would absolve himself from liability for credit subsequently extended by such persons to the firm from which he has retired. The law casts this burden on the retiring member, and where the firm name remains unchanged it does not compel those who have previously dealt with it to ascertain, each time that credit is extended, whether the membership thereof remains the same as before. In the absence of a notice to the contrary, they may assume that it does. This doctrine is elementary. Bloch v. Price (C. C.) 32 Fed. 562, 564, 565; Carmichael v. Greer, 55 Ga. 116. The usual practice among merchants is to mail written or printed notices to those with whom the firm has previously had dealings when any changes occur in the personnel of the firm, and those who have dealt with it may reasonably expect such a notice or a notice in some other form which is equally authentic. In this instance, therefore, as the plaintiff company had had dealings with the Charter Oak Mercantile Company, prior to March, 1898, the burden rested on Neal to show affirmatively that he had advised the plaintiff company of his withdrawal from the mercantile company. We are of opinion that the notice said to have been given by Cushman to Tracey was inadequate, and not binding upon the plaintiff, because Tracey's sole duty, as the evidence shows, was to take orders and submit them to his employer for acceptance or rejection, while he had

not been armed with authority to extend credit or to determine to what extent customers were trustworthy. Nor had it been made a part of his duty, so far as the record discloses, to ascertain who composed the firms with which his employer dealt, or to take note thereof, or to make report of changes therein. These duties, as it seems, had been devolved upon the credit department, and not upon the salesmen. Moreover, it would be unreasonable to charge a large mercantile establishment with knowledge of all statements which may be casually made in the hearing of its traveling salesmen, when it is so easy for one who has retired from a firm to rid himself from liability for future debts by mailing a notice of his withdrawal to those with whom the firm has been in the habit of dealing. These views are confirmed, in a great measure, by the following authorities: Stewart v. Sonneborn, 49 Ala. 178; Bensberg v. Harris, 46 Mo. App. 404; Gill v. Kaufman, 16 Kan. 571; Butler v. Dorman, 68 Mo. 298, 30 Am. Rep. 795; McKindly v. Dunham, 55 Wis. 515, 13 N. W. 485, 42 Am. Rep. 740; Holland v. Van Beil, 89 Ga. 223, 15 S. E. 302. We think, therefore, that, even if the jury had given credence to Neal's testimony concerning the interview between Cushman and Tracey, it would not have warranted a verdict and judgment in favor of Neal, because there was no evidence that Tracey communicated the fact, of which he is said to have been advised, to his firm, as he probably would have done if the fact had been communicated to him.

For these reasons the judgment below is affirmed.