McNAMEE v. WILLIAMS et al.

(Third Division. Fairbanks. December, 1907.)

1. MINES AND MINERALS (§§ 97, 99, 100*)—MINING PARTNERSHIP.

    The defendants Kelley, Blondo, and Broome were partners engaged in working a placer mine. Kelley sold to Williams, who agreed for a valuable consideration to assume and pay Kelley's share of the debts. Kelley had employed a large number of miners, to whom he and his partners owed large sums of money. No notice was given to them, or to Kelley's partners, or to the public, of the change in partners, except that all knew Williams had come into the partnership and was engaged in working the mine with the other partners. The enterprise failed, and the miners brought suit for their wages, making Kelley, Blondo, Broome, and Williams parties defendant as copartners, and praying judgment against all of them for the full amount of wages earned both before and after Williams entered the copartnership. *Held*, the relationship existing between the defendants was that of a mining partnership; that it was not dissolved by Kelley's withdrawal and Williams' admission; that Kelley was held for subsequent wages, because he gave no notice of dissolution, either actual or constructive; that Williams was held for prior debts by his agreement; that plaintiff was entitled to single judgment against the four partners.

    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 222–225; Dec. Dig. §§ 97, 99, 100.*]

This is an action to recover wages, brought by the plaintiff, for himself and as assignee of many others, against the defendant Williams and three other persons as mining partners. A jury was waived, and the case submitted to the court. The evidence discloses that Kelley, Blondo, and Broome were mining partners, that the plaintiff and his assignors worked in their mine, and that the partners owed them large sums for wages. Without notice to the laborers, or to his other partners, Kelley sold his partnership interest to Williams, who came

into the enterprise, assumed to pay Kelley's portion of the prior indebtedness, and carried on the mining work without a break. The plaintiff and his assignors saw Williams there at work, and knew that he had bought into the enterprise, but were not notified, by Kelley or any one else, that Kelley had quit the partnership. Kelley employed the men. He was known to be responsible, and did not give them any notice of discharge, or change in their relationship toward him. The largest portion of the indebtedness was incurred before Williams came into the partnership and assumed to pay the prior indebtedness. The action was brought against all four defendants as mining partners.

Roden & De Journel, for plaintiff.
McGowan & Clark, for defendants.

WICKERSHAM, District Judge. There is little dispute over the facts. The sole question at issue is whether, under the facts, the court can give judgment against all the defendants for the whole sum due—part having been earned while Kelley, Blondo, and Broome alone were mining partners, and part after Williams came into the enterprise, assuming and agreeing to pay Kelley's portion of the prior indebtedness.

Generally, where one partner withdraws, the partnership is dissolved. If the remaining partners take another person into the enterprise, this is not, ordinarily, a continuation of the old partnership, but the beginning of a new one. The obligations of the two groups of partners are separate and distinct, and separate judgments at law must be given upon their obligations. The courts have, however, recognized a difference in principle between those rules governing ordinary trading partnerships and those frequently formed for mining.

"Mining partnerships, as distinct associations, with different rights and liabilities attaching to their members from those attaching to members of ordinary trading partnerships, exist in all mining com-

munities. Indeed, without them successful mining would be attended with difficulties and embarrassments much greater than at present. In Skillman v. Lockman the question of the relations existing between parties owning several interests in a mine came before the Supreme Court of California, and that court said that, 'whatever may be the rights and liabilities of tenants in common of a mine not being worked, it is clear that, where the several owners unite and co-operate in working the mine, then a new relation exists between them, and to a certain extent they are governed by the rules relating to partnerships. They form what is termed a "mining partnership," which is governed by many of the rules relating to ordinary partnerships, but also by some rules peculiar to itself, one of which is that one person may convey his interest in the mine and business without dissolving the partnership.' 23 Cal. 203 [83 Am. Dec. 96]. The same doctrine is asserted in numerous other cases, not only in that court, but in the courts of England. Associations for working mines are generally composed of a greater number of persons than ordinary trade partnerships, and it was early seen that the continuous working of a mine, which is essential to its successful development, would be impossible, or at least attended with great difficulties, if an association was to be dissolved by the death or bankruptcy of one of its members, or the assignment of his interest. A different rule from that which governs the relations of members of a trading partnership to each other was, therefore, recognized as applicable to the relations to each other of members of a mining association. The delectus personæ which is essential to constitute an ordinary partnership has no place in these mining associations." Kahn v. Smelting Co., 102 U. S. 641, 645, 26 L. Ed. 266; Bissell v. Foss, 114 U. S. 252, 260, 5 Sup. Ct. 851, 29 L. Ed. 126; Kimberly v. Arms, 125 U. S. 512, 530, 9 Sup. Ct. 355, 32 L. Ed. 764.

Under the principles announced in these cases the defendants constituted a mining partnership, and, conceding the sale by Kelley to Williams, it did not dissolve the association, so as to require different suits and judgments against the separate groups of interests. Williams agreed for a valuable consideration to pay the prior indebtedness of Kelley. He does not resist a judgment requiring him to do so. Neither can Kelley avoid his liability to his employés by making the sale to Williams. The latter's agreement to pay Kelley's debts did not

pay them, nor relieve Kelley from his liability to pay them. Under the admitted facts, both Kelley and Williams, and, of course, Blondo and Broome, are liable for the debts due prior to the sale to Williams and the alleged dissolution of the firm by the withdrawal of Kelley. The case, then, narrows down to the question whether or not Kelley is liable, with the last group of mining partners, for the debts due to the laborers after the date of the alleged dissolution.

No notice of that dissolution was given to the laborers. They knew Williams had entered the mining partnership; but neither they, nor the other partners, knew that Kelley had withdrawn. The business of the partnership ran on just as usual, and the laborers continued to work upon their original contract of employment made with Kelley. Persons dealing with a partnership have a right to presume, and the law will presume, that the persons once composing the firm continue doing business in the firm name, the firm continues to exist, and nothing short of personal notice that the firm has been dissolved will relieve the parties of their liability as partners. No agreement or understanding between the partners, no division of their business, can relieve either of his legal liability as to creditors who extended credit to the firm. Moline Co. v. Rummell (C. C.) 12 Fed. 658. When a persons retires from a firm with which he has been connected, it is his duty to advise all persons with whom the firm has previously had dealings that he has so withdrawn, if he would absolve himself from liability for credit subsequently extended by such persons to the firm from which he has retired. The law casts this burden on the retiring member, and, where the firm name remains unchanged, it does not compel those who have previously dealt with it to ascertain, each time that credit is extended, whether the membership thereof remains the same as before. In the absence of a notice to the contrary, they may assume that it does. This doctrine is elementary. Bloch v.

Price (C. C.) 32 Fed. 562, 564, 565; Carmichael v. Greer, 55 Ga. 116; Neal v. M. E. Smith & Co., 116 Fed. 20, 22, 54 C. C. A. 226.

Under that rule, and the facts in this case, Kelley was clearly liable as a partner for the debts of the firm due to these laborers after his alleged sale and withdrawal, without notice or knowledge being called home to the laborers.

Judgment against the partnership, including Kelley and Williams, for the whole amount due the plaintiff.