## TUCKERMAN v. MEARNS et al.

(Court of Appeals of District of Columbia. Submitted October 9, 1919. Decided December 1, 1919.)

No. 3240.

1. BROKERS ⊜⇒6—STOCKBROKER CUSTOMER'S AGENT IN BUYING STOCK.

As to stock purchases, a broker is the customer's agent, and is bound to follow his directions or decline the agency.

2. BROKERS ⊜⇒26—CUSTOMER HAS TITLE TO STOCK BOUGHT FOR CUSTOMER.

A broker, advancing money and purchasing stock for a customer, becomes the customer's creditor, and if he retains possession of the stock as security for his advancements, he is a pledgee of the stock, or if the stock is fully paid for, and he retains possession subject to the customer's order, he is merely a bailee, but in any case the title is in the customer.

3. BROKERS ⊜⇒38(2)—CUSTOMER'S REMEDY AGAINST BROKERS AT LAW PRECLUDES EQUITY SUIT.

A customer cannot proceed in equity against the former members of a bankrupt brokerage concern, which had purchased stock for plaintiff, upon the theory that the brokerage firm was a trustee holding the legal title for the customer's benefit, without evidence indicating an intent to create a trust; his remedy being at law.

4. BANKS AND BANKING ⊜⇒153—"SPECIAL DEPOSIT" DEFINED.

A "special deposit" implies the custody of property without the authority in the custodian to use it, and the right of the owner to receive back the identical thing deposited.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Special Deposit.]

5. BROKERS ⊜⇒23—HOLDING CUSTOMER'S STOCK NOT A SPECIAL DEPOSIT.

Stock purchased by a broker for a customer does not constitute a special deposit in the broker's hands, since the broker might discharge his obligation by delivering other stock of equal kind and denomination.

6. PARTNERSHIP ⊜⇒239(5)—LIABILITY OF RETIRING MEMBERS NOT DISCHARGED BY DEALINGS WITH NEW FIRM.

The retirement of defendants from a stock brokerage firm between the time the firm became unable to meet its obligations to plaintiff customer and the date the firm became bankrupt does not absolve them from liability, although plaintiff continued to do business with the firm, and to receive dividends on the stock in question after defendants' retirement; such acts not amounting to acquiescence by plaintiff in defendants' withdrawal and the acceptance of the responsibility of the new firm for the obligation.

7. COURTS ⊜⇒444(2)—STATUTE SUPERIOR TO RULE OF SUPREME COURT OF DISTRICT OF COLUMBIA.

Judicial Code, § 274a (Comp. St. § 1251a), relating to procedure in cases not brought on the proper side of the court, is superior to any rule inconsistent therewith formulated under Code of Law, § 85, authorizing the District of Columbia Supreme Court to make equity rules, etc.

8. COURTS ⊜⇒444(2)—RETROACTIVE OPERATION OF RULES OF DISTRICT OF COLUMBIA SUPREME COURT.

Rule 76 of the District of Columbia Supreme Court, relating to transferring cases brought on the wrong side of the court, is inapplicable to a case in which the decree was rendered prior to its adoption.

9. COURTS ⊜⇒352—STATUTES RELATING TO TRANSFER BETWEEN EQUITY AND LAW SIDES APPLICABLE TO BILL FILED BEFORE ITS ENACTMENT.

Judicial Code, § 274a (Comp. St. § 1251a), relating to the procedure in cases brought on the wrong side of the court, is applicable to a case in

which the bill was filed before, and the decree entered after, its enactment.

10. COURTS ⊚=352—TRANSFERRING CAUSE TO LAW SIDE INSTEAD OF DISMISSING.
Under Judicial Code, § 274a (Comp. St. § 1251a), relating to amendments in actions brought on the wrong side of the court, etc., a customer's action against brokers, erroneously brought in equity, should not be dismissed, but the pleadings recast, and the cause transferred to the law side of the court.

Appeal from the Supreme Court of the District of Columbia.

Suit by Wolcott Tuckerman against William A. Mearns, Charles P. Williams, Rudolph Kauffman, and others. From a decree dismissing the bill, plaintiff appeals. Reversed and remanded.

C. C. Tucker, C. A. Keigwin, and Allen MacCullen, all of Washington, D. C., for appellant.

F. J. Hogan and W. H. Donovan, both of Washington, D. C., for appellees.

VAN ORSDEL, Associate Justice. Appellant, plaintiff below, brought a suit in equity in the Supreme Court of the District of Columbia to recover the value of certain stock purchased for him by defendant firm of Lewis Johnson & Co.

Lewis Johnson & Co. were a copartnership, conducting a banking and stock brokerage business in the city of Washington from 1858 until November, 1914, when it went into bankruptcy. At the time of the transaction here involved, the partners constituting the firm were defendants Mearns and Williams and one John W. Henry. Plaintiff was a customer of the bank, and on March 28, 1912, had on deposit therein the sum of $21,890.40, together with certain securities bought on his account and held for him. On that date he directed the firm to purchase for him 200 shares of the capital stock of the Amalgamated Copper Company. The stock was purchased through Post & Flagg, brokers, the firm's New York correspondent, at $80 per share. On the same day, Johnson & Co. notified plaintiff of the purchase, and on the following day debited plaintiff's account with $16,000, the purchase price, plus $25 commission.

No demand for delivery of the stock was ever made by plaintiff. The record evidence, on which there is no dispute, disclosed that from the date of the purchase until the failure of the firm, about 2 years and 8 months, the stock was carried on the books of the firm to the credit of plaintiff, and periodical statements were furnished plaintiff, showing the credit to his account of successive quarterly dividends accruing upon the stock. It also appears that Johnson & Co. never had actual possession of the stock, but that it was held by Post & Flagg to the credit of Johnson & Co. Until May 31, 1912, or about 2 months after the purchase, Johnson & Co. had to its credit with Post & Flagg 200 shares of the Amalgamated Copper Company's stock, but after that date it was short at least 400 shares, and so continued until the date of the bankruptcy.

Plaintiff, in his bill, averred at length the circumstances of the purchase of the stock and the leaving of the stock with Johnson & Co.

⊚=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

upon special deposit subject to plaintiff's order. It was sought by the prayers to discover the whereabouts of the stock and what had become of it, and to secure its surrender to plaintiff, if possession could be had; otherwise, a personal judgment for its value.

At the conclusion of the hearing, the trial court dismissed the bill with the following statement:

"In this case no accounting is sought and under the proofs the facts show a simple bailment. While the bill prayed for a discovery, the answers of the defendant revealed no facts other than those which were within the knowledge of the complainant. I am of the opinion that the remedy at law is plain, adequate, and complete, and that the bill should be dismissed without prejudice to an action at law."

[1, 2] From the decree dismissing the bill, plaintiff appealed. At the inception we are confronted by the peculiar relation which exists between a stockbroker and his customer. It is the customer who purchases the stock. He merely procures the broker as his representative to buy it on his account. The broker is but the agent of the customer, bound to follow his directions or decline the agency. Galigher v. Jones, 129 U. S. 193, 9 Sup. Ct. 335, 32 L. Ed. 658. Being a mere agent for the purchase of the stock, the title to the stock, both legal and equitable, is in the customer. Richardson v. Shaw, 209 U. S. 365, 377, 28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981. If the broker advances money in making the purchase, he becomes the creditor of the customer, and if he retains possession of the certificates of stock as security for money advanced, he is a pledgee of it; or, if the stock is fully paid for, as in the present case, and he retains possession of it subject to the order of the customer, he is merely a bailee of it. The law is briefly, but clearly, summarized in Jones on Pledges, § 496, as follows:

"The broker acts in a threefold relation: First, in purchasing the stock he is an agent; then in advancing money for the purchase he becomes a creditor; and, finally, in holding the stock to secure the advance made, he becomes a pledgee of it. It does not matter that the actual possession of the stock was never in the customer. The form of delivery of the stock to the customer, and a redelivery by him to the broker, would have constituted a strict formal pledge. But this delivery and redelivery would leave the parties in precisely the same situation they are in when, waiving this formality, the broker retains the certificates as security for advances."

[3] Whatever may be the distinction between a case where the certificates of stock are held by the broker as security for money advanced and the present case, where the broker purchased the stock and charged the full purchase price to the account of the customer, it cannot affect the underlying principle common to both—that the title is in the customer. Equity, therefore, cannot be invoked on the untenable ground that the broker is a trustee in whom is vested the legal title. While it is true that there is a limited trust relation in every case of bailment, there is nothing here in the conduct of the parties from which an intention to create a trust may be assumed. Blackstone defines a bailment as:

"A delivery of goods in trust, upon a contract, express or implied, that the trust shall be faithfully executed on the part of the bailee." 2 Bl. Comm. 451.

262 F.—39

In a case of simple bailment, like the present, divested of any facts or circumstances from which it may even be inferred that the parties intended to create a trust, where the obligation does not arise from confidential relations, and no such fiduciary relations exist between the parties as to require the intervention of equity, the remedy is at law. In Young v. Mercantile Trust Co. (C. C.) 140 Fed. 61, the court, considering a situation strikingly analogous to that here presented, concluded as follows:

"The next point is whether the relations between the contending parties were of a fiduciary character. Assuming the relations of bailor and bailee to have existed, the question naturally arises whether a fiduciary responsibility was imposed thereby. That the transactions of principal and agent, bailor and bailee, and pledgor and pledgee are not cognizable in equity, is clear, unless accompanied by facts and circumstances from which it may be presumed that the intendment of the parties was to create a trust, or where the obligations imposed arose out of confidential relations."

[4] Nor does counsel for plaintiff improve his jurisdictional dilemma by calling this a special deposit. A special deposit implies the custody of property without authority in the custodian to use it, and the right of the owner to receive back the identical thing deposited.

"In the case of a special deposit, the bank assumes merely the charge or custody of property, without authority to use it, and the depositor is entitled to receive back the identical money or thing deposited. In such case, the right of property remains in the depositor, and if the deposit is of money, the bank may not mingle it with its own funds. The relation created is that of bailor and bailee, and not that of debtor and creditor." 3 R. C. L. 522.

[5] But this was not a special deposit of specific shares of stock. In brokerage transactions, the broker may make good on demand of the customer by delivering stock of equal kind and denomination as that originally purchased. The character of the property involved permits the substitution. As was said in Richardson v. Shaw, supra, 209 U. S. 378, 28 Sup. Ct. 516, 52 L. Ed. 835, 14 Ann. Cas. 981:

"It is objected to this view of the relation of customer and broker that the broker was not obliged to return the very stocks pledged, but might substitute other certificates for those received by him, and that this is inconsistent with ownership on the part of the customer, and shows a proprietary interest of the broker in the shares; but this contention loses sight of the fact that the certificate of shares of stock is not the property itself—it is but the evidence of property in the shares. The certificate, as the term implies, but certifies the ownership of the property and rights in the corporation represented by the number of shares named. A certificate of the same number of shares, although printed upon different paper and bearing a different number, represents precisely the same kind and value of property as does another certificate for a like number of shares of stock in the same corporation. It is a misconception of the nature of the certificate to say that a return of a different certificate, or the right to substitute one certificate for another, is a material change in the property right held by the broker for the customer."

[6] It is urged by counsel for appellees that defendants Mearns and Williams are released from liability by reason of their retirement from the firm of Lewis Johnson & Co. between the date when, according to its books, the firm was short in Amalgamated Copper Company's stock, and therefore unable to meet plaintiff's demand for delivery of his stock had such demand been made, and the date when the firm went in-

to bankruptcy. It appears that, after these defendants withdrew from the firm and gave notice of their withdrawal, plaintiff continued to do business with the firm and to receive dividends on the stock in question. This, it is insisted, amounted to an acquiescence by plaintiff in defendants' withdrawal, and the acceptance of the responsibility of the new firm for this obligation. With this contention we cannot agree. The situation here presented is not different from that presented in the recent case in this court of Mearns v. Chatard, 47 App. D. C. 257, which involved a conversion of stock by the same firm involved in the present case. In that case a wrongful hypothecation of the stock had been committed while Mearns was a member of the firm. This was corrected by redemption of the stock before Mearns withdrew from the firm. Another conversion of the stock occurred after Mearns' withdrawal, and it was contended that his liability for the original conversion was purged by the redemption of the stock while he was yet a member of the firm. On this point the court said:

"To this we cannot assent. The liability which he assumed as a member of the old firm when the stock was first placed with it continued until the stock was accounted for to its owners, or he was released therefrom. Blew v. Wyatt, 5 Car. & P. 397; Daniel v. Cross, 3 Ves. Jr. 277; Bernard v. Torrance (Md.) 5 Gill & J. 383; Easton v. Wostenholm, 137 Fed. 524, 70 C. C. A. 108; Neal v. M. E. Smith & Co., 116 Fed. 20, 54 C. C. A. 226. It was not accounted for, and we have found he was not released; therefore he was liable for it, either as of the date of the first or the second hypothecation. Appellee could have selected one or the other."

[7-10] It is urged by counsel for plaintiff that, assuming the court was correct in holding that there was a complete and adequate remedy at law, it was error to dismiss the bill. The proper order, it is contended, should have been to transfer the case for trial from the equity to the law side of the court. It was held in Curriden v. Middleton, 232 U. S. 633, 636, 34 Sup. Ct. 458, 58 L. Ed. 765, that equity rule 22 of the Supreme Court of the United States (198 Fed. xxiv, 115 C. C. A. xxiv) has no application to the courts of the District of Columbia. The ruling is based upon section 85 of the District Code, which, defining the jurisdiction of the equity court, provides:

"The practice in said court shall be according to the established course of equity and procedure and the rules established by the said Supreme Court of the District not inconsistent with law."

This brings us to the consideration of section 274a of the federal Judicial Code (38 Stat. 956 [Comp. St. § 1251a]), which is as follows:

"That in case any of said courts shall find that a suit at law should have been brought in equity or a suit in equity should have been brought at law, the court shall order any amendments to the pleadings which may be necessary to conform them to the proper practice. Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court. The cause shall proceed and be determined upon such amended pleadings. All testimony taken before such amendment, if preserved, shall stand as testimony in the cause with like effect as if the pleadings had been originally in the amended form."

This statute was· enacted as an amendment to the Judicial Code, and appended to and made a part of chapter 11 thereof, which relates to the jurisdiction common to the courts of the United States generally, including the courts of the District of Columbia. It must be held, therefore, that the provisions of 274a are superior to any rule inconsistent therewith formulated under authority of section 85 of the Code.

Rule 76 of the Supreme Court of the District of Columbia, adopted April 25, 1919, is as follows:

> "If at any time it appear that a suit commenced in equity should have been brought as an action on the law side of the court, or that a suit at law should have been brought in equity, it shall be transferred to the law or equity side of the court, as the case may be, and be there proceeded with, with only such alteration in the pleadings as shall be essential."

This rule is in conformity with section 274a, supra. The statute seems to more particularly define the course of procedure in the District Courts of the United States where the same judge simultaneously holds both an equity and a law court. The rule, however, merely conforms the· procedure defined in the statute to the custom of the Supreme Court of the District of Columbia in holding the equity and law courts in separate divisions and presided over by different judges.

We come now to the procedure which should have been adopted in the court below. It will be observed that, under the statute:

> "Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court."

This, in effect, forbids the dismissal of a bill in equity on the ground of an adequate remedy at law, or the sustaining ·of a demurrer at law on the ground that the remedy is in equity. When either of these conditions arise, it is the duty of the trial judge, either upon motion of counsel or upon his own motion, to order a recasting of the pleadings and the transfer of the cause to the proper side of the court. In Collins v. Bradley Co. (D. C.) 227 Fed. 199, 201, the court, considering the broadening effect of section 274a upon equity rule 22 of the Supreme Court of the United States, said:

> "The equity rule and the statute have swept away entirely any and all technical objection whatsoever. While the Constitution preserves the right to a jury trial in every action at law, the practice as to raising the objection is revolutionized. Defendant's motion to dismiss may be taken as a motion to transfer the case to the law side, if the remedy at law is adequate."

We are in accord with this practical construction of the intent of Congress to establish a simple, speedy, and inexpensive means of according justice, and at the same time closing the door against the bar of the statute of limitations which, under the former practice, frequently furnished an available avenue of escape for the party justly liable, thereby resulting in a miscarriage of justice.

Rule 76 had not been adopted when the decree in this case was entered, and therefore is not applicable here. Section 274a was enacted after the original bill was filed, but it was in force when the decree here appealed from was entered, and applies directly to this action. Collins v. Bradley Co., supra. The court, therefore, erred in dis-

missing the bill. The order should have been to recast the pleadings and transfer the cause to the law side of the court.

The decree is reversed, with the costs of this appeal to be equally divided between the appellant and appellees, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.