## EL DORADO OIL WORKS ET AL. *v.* UNITED STATES ET AL.

No. 428. Argued January 30 and March 26, 1946.—Decided April 22, 1946.

*W. F. Williamson* argued the cause and filed briefs for appellants. *H. Russell Bishop* entered an appearance for the El Dorado Oil Works, appellant.

*Daniel W. Knowlton* argued the cause for the United States and the Interstate Commerce Commission, appellees. With him on the brief were *Solicitor General McGrath* and *Walter J. Cummings, Jr. Mr. Knowlton* also filed a brief for the Interstate Commerce Commission.

*Allan P. Matthew* argued the cause for the General American Transportation Corporation, appellee. With him on the briefs were *Kenneth F. Burgess* and *Douglas F. Smith.*

*J. Carter Fort* and *Thomas L. Preston* filed a brief for the Alabama Great Southern Railroad Company et al., appellees.

MR. JUSTICE BLACK delivered the opinion of the Court.

Appellants filed a complaint in the District Court under 28 U. S. C. 41 (28), challenging action taken by the Interstate Commerce Commission allegedly pursuant to instructions contained in an earlier opinion rendered by this Court in connection with these proceedings. 308 U. S. 422. The District Court dismissed the complaint for want of jurisdiction on the ground that the Commission's action did not amount to a reviewable "order" within the meaning of 28 U. S. C. 41 (28). The case is before us on direct appeal. 28 U. S. C. 345.

The following facts constitute the background of this proceeding:

El Dorado Oil Works, one of the appellants, processes, sells, and ships coconut oil in interstate commerce. Special kinds of tank cars are necessary for that distribution. The appellee, General American Tank Car Corporation,[1] owns tank cars which it rents and leases to various shippers. In 1933, Oil Works made a contract with the Car Company to rent, for a period of three years, fifty tank cars at $27.50 per car per month, and such additional cars as it might need at $30 per car per month. The outstanding railroad tariffs, prescribing payment by the railroad of 1½¢ per mile for the use of tank cars, contained rules which provided that the mileage would be paid only to the "party" whose "reporting marks" appeared on the cars. During part of the rental period here in question the rules provided that "mileage for the use of cars of private ownership will be paid . . . only to the car owner—not to a

---

[1] General American Transportation Corporation has become the successor of the General American Tank Car Corporation.

lessee." Since under the agreement the cars were to bear the "reporting marks" of the Car Company and not the Oil Works, and since Oil Works was a lessee, no tariffs authorized railroad mileage payments to Oil Works. Nevertheless, under the agreement Oil Works was to receive the full mileage allowance prescribed by the tariffs. The rent Oil Works was to pay to Car Company was to be taken out by Car Company from the mileage allowances it received from the railroads and the balance was to be paid by it to Oil Works. The railroad payments proved to be greatly in excess of the rental obligations, and Car Company regularly paid the difference to Oil Works, until July 1, 1934.

July 2, 1934, the Interstate Commerce Commission, after an exhaustive investigation, handed down its findings, opinion, and conclusion in *Use of Privately Owned Refrigerator Cars*, 201 I. C. C. 323. It there drew a distinction between car owners as a class and car renters as a class. It found that car owners must have sufficient rental allowances, whether they rented to railroads or to shippers, to pay a reasonable return on investment, taking into consideration cost of maintenance, idle cars, etc. On the other hand the Commission found that car renters had no such fixed costs. The Commission's conclusion was that costs of rented cars to a shipper, including rent and incidentals, was the only allowance the shipper-lessee should receive from a railroad, directly or indirectly, and that if he receives more, the cost of transportation to him would be less than the cost of transportation to shippers generally, especially those who use cars furnished by the carriers. To make the railroad pay more for use of a car rented by a shipper than the rent he had to pay, was, according to the Commission, a violation of § 15 (13) of the Interstate Commerce Act, 49 U. S. C. 15 (13), in that it required the railroad to pay more for the car than was

"just and reasonable." The Commission was of the opinion that refunds of car mileage in excess of the rent charged the shipper-lessee was the equivalent of an unlawful concession or rebate, prohibited by the Elkins Act. While the Commission's findings were limited to refrigerator cars, it stated that "the general principles enunciated apply equally to all other types of private cars." *Id.* at 382.

After the Commission's decision in the refrigerator case, the Car Company declined to pay over to Oil Works any part of the excess mileage. In 1935 El Dorado Terminal Company, one of the appellants acting as assignee of Oil Works, brought suit against the Car Company to recover accrued excess mileage earnings. Car Company defended on the ground that further refunds would violate Interstate Commerce legislation, particularly the Elkins Act. 49 U. S. C. 41. The district judge found that the contract was in violation of the Elkins Act, and rendered judgment for the Car Company. The Circuit Court of Appeals reversed. 104 F. 2d 903. The Car Company filed a petition for certiorari which was supported here by the Solicitor General and the Interstate Commerce Commission. Their claim that the Circuit Court of Appeals erred rested on the following major grounds: (1) The railroad's payments to Car Company, which provided no facilities to the railroad, were unauthorized; (2) since no published tariff authorized payments to a shipper-lessee such as Oil Works, its only recourse to collect allowances for the cars it had furnished was to institute proceedings before the Commission for recovery of a reasonable allowance; (3) payment to Oil Works of excess mileage earnings received by Car Company would violate the Elkins Act. In reply to the Commission's brief urging certiorari, Oil Works contended that the case did not raise a question "within the administrative or primary control of the Commission."

We granted certiorari and reversed the judgment of the Circuit Court of Appeals. 308 U. S. 422. While we rejected the Commission's contention that the District Court had no jurisdiction to hear the case, we accepted its contention that determination of the validity of the challenged past practices was for the Commission. We pointed out that the tariffs approved by the Commission fixed no uniform rate to be paid by railroads to the shipper directly for the use of cars originally rented by the shipper. We pointed out further that Oil Works had never "applied to the Commission for its decision as to what was a proper allowance for the cars furnished by it." We said that the Oil Works was "entitled, under the plain terms of § 15 (13) [of the Interstate Commerce Act], to be paid by the carrier a just and reasonable allowance" for providing the cars. The opinion stated that questions such as whether the shipper was "reaping a substantial profit from the use of the cars," and whether, on the one hand, the "allowances and practices" were lawful and reasonable or, on the other hand, violated the Elkins Act, were all administrative problems calling for investigation and determination by the Commission. The District Court was accordingly ordered to stay its hand so that the Commission could render its decision.

On remand Oil Works and Terminal Company filed a petition with the Commission praying that it hold hearings and enter an order to the effect that Car Company could pay the mileage earnings to Oil Works without violating the Elkins Act and that such payment would not constitute a rebate or concession. The Commission found that a just and reasonable allowance to Oil Works would be the cost incurred by it in furnishing the cars, namely the monthly rental to the Car Company, that any amount in excess of that would be unjust and unreasonable in violation of § 15 (13) and would "constitute a rebate and discrimination and involve a departure from the tariff

rules applicable, prohibited by section 1 of the Elkins Act, and section 6 (7) of the Interstate Commerce Act . . ." [2] The Commission further ordered that the proceeding before it be discontinued. On this appeal both sides argued the jurisdictional question as well as questions going to the merits.

Before we reach the merits of the controversy we must at the outset briefly dispose of the jurisdictional question. As the facts already stated reveal, the Commission's findings and determination if upheld constitute far more than an "abstract declaration." *Rochester Telephone Corp.* v. *United States,* 307 U. S. 125, 143. "Legal consequences"

---

[2] The Commission did not rule that a shipper-lessee would always be entitled to allowances equal to the cost to him of the cars he rented. The Commission's opinion makes it clear that a shipper-lessee is only entitled to receive a just and reasonable allowance for cars while they are actually used by the railroad, even though this allowance might be less than the car rent paid by the shipper. On that subject the Commission said:

> "In administering the provisions of section 15 (13) we have consistently adhered to two principles, bearing in mind that we were to prescribe the *maximum* amount which the carrier might pay: (1) The amount paid should not be more than was just and reasonable for the service or instrumentality furnished, and (2) that the amount which might be paid should not exceed the reasonable cost to the owner of the goods of performing the service or furnishing the instrumentality used. Whichever of these sums was the lower marked the maximum the carrier might pay."

Here the Commission has applied these uniform criteria in such a way as to permit the shipper-lessee to receive as much as the full rental he paid. Were it not for these proceedings resulting from the Car Company's refusal to continue payments to the shipper, the railroad would have had to pay as it did pay 1½¢ per mile, which proved far in excess of the rental. It may be that in other cases a just and reasonable rate would fall below the rental. It may be that in this case the rental exceeded what would be a just and reasonable allowance with respect to the use of the cars by the railroad. But this would serve to further reduce the rate to which appellants were actually entitled; appellants, therefore, have no interest in challenging the Commission's order on this point.

(*id.* at 132) would follow which would finally fix a "right or obligation" (*id.* at 131) on appellants' part. These findings are more than a mere "stage in an incomplete process of administrative adjudication," for the Commission here has discontinued further proceedings. *Id.* at 143. We, therefore, think that the Commission's action falls within the class of "orders" which *Rochester Telephone Corp.* v. *United States, supra,* held to be reviewable by a district court of three judges. The District Court erred in dismissing the complaint for want of jurisdiction.

On the merits, appellants' major contention is that the Interstate Commerce Act and our earlier opinion in this case do not authorize the Commission to determine, as it here has done, the justice and reasonableness of mileage allowances which appellants were to receive on past transactions. The contention is that both our opinion and the Act authorize the Commission to do no more than determine what uniform allowance shippers as a class would be permitted to charge in the future. In part the argument is that insofar as the order is based on a treatment of shipper-lessees as a class apart, and on a limitation of their allowance to the cost to them of the cars they furnish, the order is invalid, in that it neither rests on, nor brings about, a uniform rate to all shippers, or even all shipper-lessees. We cannot agree with the above contentions.

First, it must be noted that the Commission made its determination as to the lawfulness of these past practices on the basis of appellants' own application, asking the Commission to do so. Second, our previous opinion, as well as the Interstate Commerce Act, authorized the Commission to make this determination. The question before us when this case was first here did not relate to future but to past allowances. Relying on past decisions, we held that the "reasonableness and legality" of the past dealings here involved were matters which Congress had entrusted to the Commission. See e. g. *Great Northern R.*

*Co.* v. *Merchants Elevator Co.,* 259 U. S. 285, 291, and other cases cited in our previous opinion. And we rejected appellants' petition for rehearing which presented substantially the argument now repeated, namely that any order the Commission might make "could only be effective as to the future," that the Commission's determination "could not affect the contract . . . in this case," that the Commission's action would be "futile," and that consequently our judgment and opinion would provide no "guidance" for the District Court. Our first opinion, buttressed by our rejection of the motion for rehearing, was a plain authorization for the Commission to determine the justice and reasonableness of the past allowances to this shipper. The Commission did not have to establish future uniform rates to determine the questions we sent to it. Consequently, insofar as appellants' argument is that the Commission failed to treat all shippers or all shipper-lessees uniformly because it did not fix future uniform rates, the answer is that it was not required to do so.

Insofar as appellants' argument as to lack of uniform treatment of shippers and shipper-lessees seeks to attack the basis of the Commission's finding that the past allowances here were unjust and unreasonable, it also lacks merit. We think the Commission's finding was based on a uniform treatment of all shipper-lessees. While it is true, as appellants contend, that under the Commission's rule different shipper-lessees might receive different allowances, the rule is uniform in that it permits no shipper-lessee to receive allowances exceeding the rental he pays. All shipper-lessees are prohibited from making profits at the expense of the railroads on cars rented to transport goods in interstate commerce. Since the facts before the Commission were enough to enable it to find that such profits amount to rebates to shipper-lessees which result in a discrimination against shippers that own cars or use

cars furnished by the railroad, the Commission was justified in treating shipper-lessees as a class apart. As the Commission pointed out in its Refrigerator opinion, the history of railroad practices shows that rebates, concessions, and favoritism have frequently grown out of the private car system. Notwithstanding the very great transportation service supplied by private cars, designed and equipped to meet special needs, the Commission acts within its power when it attempts to regulate their use so as to put a stop to existing prohibited evils. It must test violations of the Interstate Commerce Act by results. *Union Pacific R. Co.* v. *United States,* 313 U. S. 450, 462. It is the duty of the Commission to nullify practices that result in rebates or preferences, "whatever form they take and in whatsoever guise they may appear," *O'Keefe* v. *United States,* 240 U. S. 294, 297.[3]

The appellants' remaining contentions challenge the sufficiency of the evidence. They rest primarily on the premise that the Commission lacked authority to determine what we had directed it to find. Insofar as these contentions rest on that premise, they have been disposed of by what we have already said. The only contention as to alleged insufficiency of evidence that requires further

---

[3] Appellants contend that if the car rental cost is the maximum allowable payment, the mileage payments to the Car Company were unlawful. That these payments by the railroad to Oil Works were "apparently" unlawful and recoverable by the railroad, was the position taken by the Commission in its brief filed when this case was first before us. And in our opinion we stated that since the shipper, not the Car Company, had furnished the cars to the railroad, "It seems clear that no rule or regulation of the carrier may provide for the payment of such allowance to any other person" except Oil Works. But appellants can not benefit from the unlawfulness of payments to the Car Company. On the contrary, such a conclusion would strengthen the position of the Commission, namely that a "just and reasonable" allowance to Oil Works must be determined by the Commission without regard to the mileage payments to Car Company.

attention is that there could be no finding that the practices here involved resulted in rebates or concessions to Oil Works, since the freight on the oils transported was not paid by it, but was allegedly always paid by the consignees and at the regular rate. Oil Works, however, was a shipper who supplied cars to be used as facilities for transportation. For supplying these cars, it could not consistently with § 15 (13) receive from the railroad, directly or indirectly, more than a "just and reasonable" allowance. This allowance was "in respect to transportation." See *Union Pacific R. Co.* v. *United States, supra,* 462. Payment by the railroad of more than the just value of the services inevitably resulted in its carrying Oil Works' product at less than the regular freight rate, even though it collected the full rate from the consignees. The reduced rate at which Oil Works could thus have its products transported justified the Commission's finding that Oil Works got a concession and an advantage over other shippers who made no such profits on tank cars. Whether Oil Works or its consignees paid the freight makes no difference. Cf. *Elgin, J. & E. R. Co.* v. *United States,* 253 F. 907, 911. A practice which accomplishes this result is prohibited by the Interstate Commerce Act and the Elkins Act.

The judgment dismissing the complaint is affirmed, but on the ground that the Commission's order is valid, and that the appellants were consequently not entitled to the relief prayed for.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, dissenting in part.

I do not think it should be left to the shipper and the car owner to determine what portion of the tariff paid by the railroad should be paid to the shipper. But that is

exactly what the Court permits when it measures the shipper's allowance by the amount of rental he has agreed to pay the car owner.

As Commissioner Splawn pointed out in his dissent from the opinion of the Interstate Commerce Commission (258 I. C. C. 371, 382–383), the Commission in following this course failed to comply with our opinion in *General American Tank Car Corp.* v. *El Dorado Terminal Co.*, 308 U. S. 422. We there said (pp. 429–430):

> "As the Circuit Court of Appeals has pointed out, different shippers may have differing costs in respect of privately owned cars furnished the carriers. Nevertheless, as the allowances to be made them by the carriers for the use of such cars must be the subject of published schedules, and must be just and reasonable, the Commission is compelled to ascertain in the light of past and present experience a fair and reasonable compensation to cover such costs and prescribe a uniform rate which will reflect such experience. It is inevitable that some shippers may be able to furnish facilities at less than the published allowance while others may find their costs in excess of it. This fact, however, does not militate against the fixing of a uniform rate applicable to shippers properly classified by the Commission." [1]

Unless that course is followed, a situation is sanctioned in which concessions and discriminations condemned by § 1

---

[1] Sec. 15 (13) of the Interstate Commerce Act, 49 U. S. C. § 15 (13), provides:

"If the owner of property transported under this chapter directly or indirectly renders any service connected with such transportation, or furnishes any instrumentality used therein, the charge and allowance therefor shall be published in tariffs or schedules filed in the manner provided in this chapter and shall be no more than is just and reasonable, and the commission may, after hearing on a complaint or on its own initiative, determine what is a reasonable charge as the maximum to be paid by the carrier or carriers for the services so rendered or for the use of the instrumentality so furnished, and fix the same by appropriate order, which order shall have the same force and effect and be enforced in like manner as the orders above provided for under this section."

of the Elkins Act, 32 Stat. 847, 34 Stat. 587, 49 U. S. C. § 41, are likely to thrive.

There is a further objection to the course which the Court sanctions. As stated by Commissioner Splawn in his dissenting opinion (258 I. C. C. at 384):

> "It is elementary that the form of an allowance for the use of cars must be such as to reflect the extent of the use by the railroads of the facilities furnished. Whenever we have had occasion to determine such allowances, we have prescribed either per diem or mileage allowances. The railroads cannot be held responsible for the amount of rent reserved by the Car Corporation in an agreement with the shipper as the car may be left idle during the entire period. The car has value to the railroad only when it is used in transporting lading and results in the payment of freight charges."

Any allowance based on cost to the shipper rather than on the use of the facility furnished violates that principle.

Only an appropriate uniform rate would obviate both of the objections I have mentioned.[2] I would remand the

---

[2] The Commission's finding was "That the rental paid or to be paid by El Dorado Oil Works to General American Tank Car Corporation under the terms of the lease agreement between those parties, dated September 28, 1933, was the only cost incurred by the former in furnishing the tank cars in which its shipments moved. A just and reasonable allowance as a maximum to have been paid by the respondents, rail carrier or carriers, to the Oil Works for the furnishing of such cars would have been an amount not to exceed such rental. Such an amount and allowance has been paid to the Oil Works through credits made to the account of the Oil Works by the Tank Car Corporation."

There are no facts of record which show the relationship between the rental paid and the extent of the use by the railroads of the facilities furnished. The Commission made no findings in that regard.

Whether a uniform rate which is just and reasonable would be greater or less than the rental is wholly conjectural on the present record.

case to the Commission so that it could now do what, according to my understanding, we originally intended it to do in accordance with the requirements of § 15 (13) of the Interstate Commerce Act.[3]