## GREAT LAKES STEEL CORPORATION v. UNITED STATES et al.

### No. 6295.

United States District Court
E. D. Michigan, S. D.
Dec. 22, 1948.

James McEvoy, Jr., Edward T. Goodrich and Hill, Essery, Lewis & Andrews, all of Detroit, Mich., and Harry D. Fenske, of Ecorse, Mich., for Great Lakes Steel Corporation.

Tom C. Clark, Wendell Berge and Edward Dumbauld, all of Washington, D. C., and Thomas P. Thornton and Roger P. O'Connor, both of Detroit, Mich., for the United States.

Daniel H. Kunkel and Daniel W. Knowlton and E. M. Reidy, all of Washington, D. C., for Interstate Commerce Commission.

Angell, Turner, Dyer & Meek, of Detroit, Mich., Willis T. Pierson, of Cleveland, Ohio, Edward A. Kaier, of Philadelphia, Pa., and Frank H. Cole, Jr., of Cincinnati, Ohio, for other defendants.

Before SIMONS, Circuit Judge, LEDERLE, Chief Judge, and PICARD, District Judge.

LEDERLE, Chief Judge.

This is an action by which plaintiff, Great Lakes Steel Corporation, seeks to obtain reparations of some half a million dollars from three railroads. The amount claimed represents the difference between

commercial freight rates which the railroads required plaintiff to pay for steel and iron shipments and the allocable portion of a lesser through rate which plaintiff claims should have been charged under what it claims were the applicable transit tariffs. It is conceded that if the special transit tariffs do not apply, freight was properly computed in accordance with other higher-rated tariffs.

The litigation originated by plaintiff filing a complaint for reparations before the Interstate Commerce Commission against the Baltimore and Ohio Railroad Company, the Erie Railroad Company, and the Pennsylvania Railroad Company, as defendants, bearing docket number 29,165. The report and order of the Commission denied plaintiff's right to reparations, holding the shipments were not covered by transit tariffs but by the other tariffs under which the railroads had computed the freight. From such ruling, plaintiff filed this appeal in this court under the Urgent Deficiencies Act, 28 U.S.C.A. § 41(8)(28), 45, 46 and 47.[1] The Interstate Commerce Commission and the three railroads intervened.

At a pre-trial hearing held June 3, 1948, the entire records before the Commission were received as exhibits, to constitute the complete record before this court. The case was heard by a three-judge District Court, constituted as required by the Revised Judicial Code, 28 U.S.C.A. § 2321 et seq. All defendants resisted plaintiff's claims on the merits, and several of them raised a jurisdictional question, asking that the complaint be dismissed for lack of jurisdiction. The court being of the opinion that this latter point is well taken, only a brief reference will be made to the underlying facts.

A transit tariff is one designed to permit stopping a shipment of material in transit for the performance of fabrication, manufacture or other work upon the material before re-shipping to ultimate destination. If the operation comes within the terms of the tariff, the complete transportation is regarded as one continuous movement, and, except for a slight transit charge, the freight is computed on the through rate from point of origin to point of ultimate destination.

During World War II, plaintiff owned a steel manufacturing plant at Mansfield, Ohio, to which it shipped iron and steel in carload lots over defendants' roads from origin points in Michigan, New York and Rhode Island. The iron and steel were unloaded, taken into the Mansfield plant and fabricated by plaintiff into Quonset huts in unassembled condition. These unassembled huts were then packed for overseas war shipment and sold to the United States Government f. o. b. Mansfield. From Mansfield, they were shipped by rail on Government bills of lading, at Government rates and expense, to ocean ports for shipment overseas. The Commission held that under these circumstances the continuity of each shipment was broken at Mansfield, where plaintiff lost control of the goods, the reshipment was a separate and independent transaction, and that, accordingly, the transit tariff did not apply for lack of continuity, and that plaintiff properly had been charged the straight rates from point of origin to Mansfield under other applicable tariffs rather than the allocable portion of through rates from point of origin to ultimate destination.

The interstate transportation of property by railroads operating as common carriers is covered by the Interstate Commerce Act. Section 6(7) of this Act, being 49 U.S.C.A. § 6(7), provides, among other things, that no such carrier may transport property without first publishing rate tariffs covering such transportation, and, further, that no carrier shall charge a greater or less or different compensation for such transportation than the rate specified in the applicable tariff. Section 8, being 49 U.S.C.A. § 8, provides that any carrier violating the Act shall be liable in damages to the person injured thereby. Section 9, which is 49 U.S.C.A. § 9, grants civil remedies to any such injured person, with a provision that any person so damaged may either complain to the Commission or bring suit in a United States District Court for recovery of the damages, but shall not have the right to pursue both such remedies, and must in each case elect which one of

---

[1] In 1948 Judicial Code, see 28 U.S.C.A. §§ 1253, 1336, 1337, 2101, 2324.

the two methods of procedure he will adopt. As interpreted by a line of cases of which Ashland Coal & Ice Co. v. United States, 325 U.S. 840, 65 S.Ct. 1573, 89 L. Ed. 1966, is the latest, these sections preclude resort to a District Court, including review under the Urgent Deficiencies Act, after a Commission decision refusing reparations. The theory is that the injured party has exercised the statutory election for seeking reparations by proceeding before the Commission, with its concomitant exclusion of right to resort to the District Court. Plaintiff seeks to escape the impact of the Ashland Coal decision in a number of ways.

■ Plaintiff argues that, in deciding the Ashland case, the District Court first held that there was no jurisdiction because it was a reparation case in which the shipper had exercised his Section 9 option by resorting to the Commission which precluded appeal to the District Court, and, second, the court then went on arguendo to state that if it had jurisdiction it would sustain the Commission's denial of reparations on the merits. Plaintiff then states that the Supreme Court affirmed the case without opinion, and such affirmance can be, and should be, interpreted as affirming on the merits only, without affirming the decision of lack of jurisdiction, because of some statements made six years previously in the unrelated case of Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147. Suffice it to say, that we do not subscribe to the theory that, in affirming a judgment of lack of jurisdiction, wherein the trial court also made a dictum statement as to its opinion on the merits, such affirmance, without expressly saying so, either approves the dictum or disapproves the ratio decindeni. Not only do we disagree with plaintiff's deduction, but we believe its premise is factually incorrect as to there being no indication of basis for the affirmance. The Supreme Court affirmed by per curiam memorandum opinion, 325 U.S. 840, 65 S.Ct. 1573, 89 L.Ed. 1966, reading as follows: "The motions to affirm are granted and the judgment is affirmed. Standard Oil Co. v. United States, 283 U.S. 235, *240, 241,* 51 S.Ct. 429, 75 L. Ed. 999. George Allison & Co. v. United States, 296 U.S. 546, 56 S.Ct. 175, 80 L.Ed. 387. Mr. Justice Black and Mr. Justice Douglas, dissenting." (Italics added.)

Pages 240, 241 of 283 U.S., page 431 of 51 S.Ct., *75 L.Ed. 999,* of the Standard Oil case, specifically referred to as authority, are devoted to exposition of the doctrine of election of remedies by first proceeding for reparations before the Commission, which defeats the subsequent jurisdiction of the District Court on appeal or by original action. The George Allison case, also cited as authority, was itself a per curiam memorandum opinion, and the official report thereof appearing in 296 U.S. 546, 56 S.Ct. 175, 80 L.Ed. 387, indicates that therein the Supreme Court considered only the jurisdictional issue. It reads: "[*Jurisdictional statement submitted November 2, 1935.* Decided November 11, 1935.] Per Curiam. The decree is affirmed. Standard Oil Co. v. United States, 283 U.S. 235, *241,* 51 S.Ct. 429, 75 L.Ed. 999; Brady v. United States, 283 U.S. 804, 51 S.Ct. 559, 75 L.Ed. 1424." (Italics added.)

Considering first, the George Allison judgment thus affirmed was based solely upon lack of jurisdiction; second, the italicized statement that the jurisdictional statement was submitted nine days before the decree of lack of jurisdiction was affirmed; third, the reference to page 241 of 283 U.S., page 431 of 51 S.Ct., 75 L.Ed. 1424, of the Standard Oil decision, which page, as stated above, contains nothing but the discussion of lack of jurisdiction; and fourth, the cited Brady case was dismissed for lack of jurisdiction, it is apparent that the Supreme Court decision of the George Allison case was purely and only that there was lack of jurisdiction in the District Court because plaintiff had exhausted the statutory election by proceeding for reparations before the Commission.

■ Without detailing our consideration and interpretation of a number of other cases which plaintiff has cited, it appears abundantly clear to this court that as of June 18, 1945, when the Supreme Court decided the Ashland Coal case, it expressly re-iterated and re-affirmed the doctrine that where a shipper sues a carrier before the Commission for reparations, this constitutes an election under Section 9 of the

Interstate Commerce Act, which precludes recourse to a District Court either by original action or by appeal from the Commission decision.

Plaintiff's next contention against the vitality of the Ashland Coal decision is that, less than a year later, this case was overruled by the Supreme Court in the case of El Dorado Oil Works v. U. S., 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053. If this be true, the overruling was done inferentially, without mention of either the Ashland Coal case, any of the cases on which it relies, Section 8 or 9 of the Interstate Commerce Act, or election of remedies for reparations.

It is true that appeals to the District Court are permissible from certain types of Commission rulings, and, in our view, the El Dorado Oil Works case is one of these. But, it is clearly distinguishable from the case at bar and from the Ashland Coal case. The case at bar involves the application of certain unambiguous tariffs and it and the Ashland Coal case are straight Section 8 cases by shipper against carrier, in which each plaintiff exercised its Section 9 election by filing a complaint for reparations before the Commission. Having done so, the wording of Section 9 precludes recourse to a District Court. The El Dorado Oil Works litigation originated not as a Section 8 reparation action against a carrier, but as an assumpsit action filed in the state court by a shipper against a non-carrier owner of private tank cars. It was removed to the District Court on the basis of diversity of citizenship and amount involved. Defendant had rented these tank cars to plaintiff, for use in shipping oil, under a contract calling for a fixed monthly rental, with the proviso that plaintiff should receive credit for any excess between such fixed rental and the mileage allowance for use of the cars paid to defendant-owner by railroads which transported plaintiff's oil in the cars. When defendant-owner refused to continue crediting plaintiff with the excess because it indirectly constituted an unlawful freight rebate, plaintiff sued defendant-owner to enforce the contract. When the case reached the Supreme Court, it decided that, in view of the statutory policy of enforcing equal rates for all interstate trans-portation by common carriers, the real issue was, whether plaintiff was paying more or less for transportation of its oil than other shippers, which, in turn, required a determination of what would be a reasonable and just mileage allowance by carriers to shipper-lessees of private tank cars. The Supreme Court then decided that, as carriers could operate only under published tariffs and there was no tariff covering mileage allowance by railroads to private car shipper-lessees, as distinguished from private car owners, and, as the Interstate Commerce Commission has a statutory duty to investigate and to remove any advantage, preference or discrimination in rates or otherwise connected with interstate transportation, it was clearly a case where, before the courts made a determination as between this plaintiff and this defendant, the Commission should perform its exclusive statutory duty to investigate the practice and establish such a tariff, determining what was a reasonable and just rate to be included therein. Thereupon, the Supreme Court remanded the action to the District Court, with orders to stay further proceedings therein until the Commission made such an administrative investigation and determination. See General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 85, 84 L.Ed. 449. After this rate investigation was determined, the District Court proceeded with the assumpsit action and rendered judgment for defendant, which was affirmed. See El Dorado Terminal Co. v. General American Tank Car Corp., 9 Cir., 163 F.2d 428.

The case which plaintiff says overrules the Ashland Coal decision, El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053, decided April 22, 1946, relates to this separate administrative proceeding instituted before the Commission in accordance with the direction of the Supreme Court in Tank Car Corp. v. Terminal Co., supra. The Commission report of this proceeding, entitled Allowances for Privately Owned Tank Cars, 258 I.C.C. 371, relates that a petition was filed with the Commission by the Oil Company and the Terminal Company, its assignee, detailing the case history outlined above and praying that the Commission make an

investigation of the practices disclosed therein and enter an order holding the disputed credits from the tank car owner to the shipper-lessee were reasonable and lawful. Following, on page 373, the report reads: "Upon consideration of that petition, by our order dated July 24, 1940, we instituted an investigation upon our own motion to determine: (1) Whether the practices involved under the terms and operations of the lease contract are unlawful in violation of the Interstate Commerce Act; (2) whether a reasonable charge or allowance may be paid, and, if so, the amount thereof as a maximum to be paid, by the carrier or carriers by railroads for use of the tank cars furnished such carriers by petitioners for the transportation of the products of petitioners in interstate commerce from Berkeley and Oakland, Calif., in the period January 1, 1934, to December 31, 1936; and (3) what findings shall be made, or what rules, regulations or practices shall be prescribed, or what orders shall be entered, to remove any unlawfulness that may be found to exist.

"All common carriers by railroad concurring in Trans-Continental Freight Bureau tariff No. 3-N, I.C.C. 1452 (Agent Kipp issue), naming rates on coconut nut oil and other commodities from California to eastern points, were made respondents."

A hearing was held in which all parties participated. The Commission decided that a just and reasonable allowance by carriers to the Oil Works for furnishing such cars would have been an amount not to exceed the fixed monthly rental, which allowance had been paid; that payment of any allowance to the Oil Works in excess of such rental would be unjust, unreasonable and unduly preferential; that the Oil Works was entitled to no allowance for special cleaning and preparation of the tank cars; and the proceeding was discontinued. From this Commission determination, an appeal was taken to the District Court. This was heard as a three-judge case and dismissed for want of jurisdiction, the court holding specifically and only that the Commission's administrative determination was not a final appealable order as it did not finally determine any controversy. See El Dorado Oil Works v. United States, D.C.Cal., 59 F.Supp. 738. Upon direct appeal to the Supreme Court, reported in 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053, it held that the Commission's determination did constitute a final and appealable order, within the reviewing jurisdiction of a three-judge District Court and of the Supreme Court, because from the ruling legal consequences would follow which would finally fix a right or obligation. The Supreme Court then reviewed and affirmed this Commission decision on the merits. It is from the Court's statement that the District Court had appellate jurisdiction of this administrative ruling as a final and appealable order that plaintiff in the case at bar argues that the Ashland Coal case was inferentially overruled and that this court should disregard the Ashland Coal doctrine and assume jurisdiction of this reparation case. In the El Dorado Oil case, the subject of a statutory action against a carrier for reparations under Section 8 of the Interstate Commerce Act was not in issue before the court. The subject of an election of statutory remedies for reparations against a carrier under Section 9 was not before the court. Naturally, neither of these two subjects was mentioned or passed upon either directly, by reference to these sections of the Interstate Commerce Act or to cases such as the Ashland Coal case, or indirectly, by any reasonable inference to be drawn from the language used.

Accordingly, it is apparent that the rule announced in the Ashland Coal case was neither intended to be, nor was it, affected by the El Dorado Oil case, and we are bound by the Ashland Coal rule that, under the circumstances here present, plaintiff-shipper has made a binding election by proceeding before the Commission in seeking reparations from carriers, and Section 9 of the Interstate Commerce Act precludes it from now resorting to this court, by appeal or otherwise.

In view of the fact that this court is bound by decisions of the Supreme Court until they are overruled, plaintiff's argument that, if the Ashland Coal jurisdictional decision as to reparation cases has not been overruled, it should be re-exam-

ined and overruled, is not a matter upon which we are free to act.

This brings us to the next legal proposition relied upon by plaintiff, namely, that, independently of the Urgent Deficiencies Act, the Administrative Procedure Act of 1946, 5 U.S.C.A. § 1001 et seq. gives it a right to a review by this court of the Commission's ruling denying reparations. The Administrative Procedure Act provides that, "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion. (a) Any person suffering legal wrong because of any agency action * * * shall be entitled to judicial review thereof." 5 U.S.C.A. § 1009. This provision is well analyzed in Kirkland v. Atlantic Coast Line R. Co., D.C.Cir., 167 F.2d 529. There it is held that, where a previous Supreme Court case had decided that the Railway Labor Act, 45 U.S.C.A. § 151 et seq., precluded judicial review of an administrative agency action, the right to judicial review was unchanged by passage of the Administrative Procedure Act, and that, "the point seems obvious." It likewise seems obvious to this court that, where the Supreme Court has decided in the still vital Ashland Coal case that Section 9 of the Interstate Commerce Act precludes judicial review of a Commission decision under the circumstances here present, plaintiff's lack of right to review remained unchanged by passage of the Administrative Procedure Act.

Accordingly, the complaint will be dismissed for want of jurisdiction.