**NEW YORK CENTRAL RAILROAD COMPANY, The Pennsylvania Railroad Company, The New York, Chicago and St. Louis Railroad Company, Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**National Tank Truck Carriers, Inc., Intervening Defendant.**

United States District Court
S. D. New York.
Dec. 7, 1961.

---

12. Gammel v. Ernst & Ernst, supra; State for Use of National Surety Corp. v. Malvaney, supra.

John A. Daily, New York City (Robert G. Boes, Cleveland, Ohio, and Paul R. Duke, Philadelphia, Pa., on the brief), for plaintiffs.

Leonard S. Goodman, Atty., Interstate Commerce Commission, Washington, D. C. (Robert W. Ginnane, Gen. Counsel, Interstate Commerce Commission, Washington, D. C., Lee Loevinger, Asst. Atty. Gen., Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City, Richard A. Solomon, Atty., Dept. of Justice, Washington, D. C., on the brief), for defendants.

Richard J. Hardy, Chicago, Ill. (Christopher E. Heckman, New York City, on the brief, Belnap, Spencer, Hardy & Freeman, Chicago, Ill., of counsel), for intervening defendant.

Before FRIENDLY, Circuit Judge, and MURPHY and PALMIERI, District Judges.

PALMIERI, District Judge.

This is an action pursuant to Sections 1336, 1398, 2284, and 2321 through 2325 of Title 28 of the United States Code seeking a permanent injunction of an order of the Interstate Commerce Commission of March 28, 1961, entitled Tank Car Allowances in Official Territory, and reported at 313 I.C.C. 435. Plaintiffs also seek to set aside an order of the full Commission of July 5, 1961, denying reconsideration of the above order. In accordance with the provisions of 28 U.S.C. § 2325, plaintiffs' application that a District Court of three judges be convened to hear and determine the matter was granted. Plaintiffs' request for the issuance of a temporary restraining order, pending final determination of the matter by a full court, was denied. The New York Central R. R. v. United States, Civil No. 61-2757, S.D.N.Y. Aug. 11, 1961.

The railroads have long paid a mileage allowance to shippers who furnish

the railroad with tank cars for the movement of their products. By schedules filed to become effective October 10, 1959, the railroads proposed an additional flat allowance,[1] payable to shippers of sulphuric acid, alcohols, and solvents, who furnish tank cars of 8000 gallon capacity and over for short-haul movements [2] of these products in an area referred to as Official Territory.[3] The sole issue in this case is the validity of the flat allowances just described.

The proposed allowances were protested by the National Tank Truck Carriers and replies were filed by the railroads and by the Manufacturing Chemists Association (hereinafter MCA), which had conducted the study for the additional allowances. The Commission's Board of Suspension declined to suspend or investigate the additional allowances. Division 2 of the Commission, to whom the matter was appealed, allowed the new schedules to take effect as published but instituted an investigation into their lawfulness. A hearing was held and the Examiner recommended a report and order directing cancellation of the additional allowances. After exceptions and replies were filed with it, Division 2 of the Commission issued its report and order requiring cancellation of the additional allowances.

Under Section 15(13) of the Interstate Commerce Act, 49 U.S.C.A. § 15(13), the railroads may reimburse shippers who furnish the tank cars for the movement of their products provided that any such payments are the subject of published schedules and are "no more than is just and reasonable." Payments in excess of the shippers' costs are not just and reasonable and are therefore prohibited. This position was taken by the Commission in Use of Privately Owned Refrigerator Cars, 201 I.C.C. 323, and is supported by the two Supreme Court decisions in the frequently cited El Dorado cases. El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053 (1946). General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361 (1940). In the second El Dorado decision, Justice Black specifically approved the Commission's ruling, stating "it permits no shipper-lessee to receive allowances exceeding the rental he pays." El Dorado Oil Works v. United States, 328 U.S. 12, 20, 66 S.Ct. 843, 847, 90 L.Ed. 1053. This caveat against overcompensation of the shippers goes to the heart of the proceeding before us and impels us to sustain the ruling of the Commission.

While the evidence in the record indicates, and the hearing examiner has found, that the shippers will continue to suffer a deficit on their short-haul rail movements of sulphuric acid and solvents even with the additional allowance, there is, nevertheless, a definite possibility that the combination of the regular mileage allowance with the additional allowance may result in a rebate in some cases. A table contained in the Commission's report, 313 I.C.C. 438, based on the MCA study but reflecting the railroads' downward adjustment of loading and unloading time from six to four days, indicates that the mileage allowance plus the proposed allowance result in an excess for movements of sulphuric acid in the 201–300 mile range and for movements of alcohols in the 101–200 and 201–300 mile ranges. Alcohols continue to show a net excess even when the figures are averaged for the whole range. Only if alcohols and solvents are classi-

---

1. When the schedules were filed the regular mileage allowance was 4½¢ per mile and the additional allowance proposed was $17 per car for sulphuric acid and $14 per car for alcohols and solvents. Subsequently, the regular mileage allowance was increased to 5½¢ and the proposed flat allowances were reduced to $15.50 and $12.50 respectively.

2. Movements of 300 miles and less.

3. A geographical area roughly encompassing the northeastern quarter of the United States bound by the Mississippi River on the west and the Ohio and Potomac Rivers on the south. Brief for Plaintiffs, p. 2 footnote.

fied together, as the railroads have done, does a deficit result. Thus, this study indicates that a shipper of alcohols who does not ship solvents would enjoy a rebate.[4]

■ Moreover, the existing safeguard against overpayment in the regular mileage allowance, present at least in the case of the shipper-lessee, is absent in the additional allowance. The mileage allowance is paid by the carrier to the owner-lessor and the latter transmits amounts not exceeding rental costs to the shipper-lessee. The standard contract between shipper-lessee and owner-lessor prohibits the latter from transmitting amounts in excess of the shipper's rental expenses.[5] But, more important, the lessor cannot lawfully remit to the shipper amounts in excess of rental costs, and the lessor, being both the person who sets the rentals and who transmits the funds to the shipper, is in a position to know whether the sums he is transmitting exceed the rental costs. The additional allowance, however, is paid directly to the person bearing the expense of furnishing the cars. There is no provision for correlating the two allowances,

much less for preventing any rebate that might result. The Commission was justified in refusing to permit these flat allowances to be paid to shipper-lessees without the minimal restraints designed to obviate overcompensation of the shipper approved in the El Dorado cases.

■ The Commission's finding that the evidence failed to establish that the costs of the shippers participating in the study were representative of the costs of shippers generally is not without support in the record. There is testimony in the record that the six shippers to whom the Manufacturing Chemists Association sent questionnaires represented 25% of the plants handling the three commodities. The replies of four companies only were used in the study, however, and of those four, only three ship sulphuric acid and only two alcohols and solvents. The record does not indicate what percentage of plants handling the three commodities is represented by the four companies whose replies were actually used in the study. Nor does the record indicate what percentage of plants shipping sulphuric acid and what percentage

4. Du Pont, for example, ships alcohols and not solvents. Transcript of the proceedings before the I.C.C. p. 195. A representative for du Pont testified, however, that after receipt of the mileage allowance du Pont averaged a deficit of $17.22 per car on alcohols. Thus, the du Pont Co. would presumably not enjoy a rebate even though it ships alcohols and not solvents. The number of other companies that ship alcohols only and whether such companies experience a deficit or excess is not indicated. However, the figures for all the companies represented in the study show an excess for alcohols. We are bound to conclude, therefore, if we are to credit the study, that a shipper of alcohols only would enjoy a rebate.

5. This provision has been inserted as a result of the El Dorado litigation. The El Dorado cases involved an action by a shipper against a lessor who refused to remit certain sums in accordance with their leasing contract. The contract provided that the owner would collect all

mileage payments from the carrier and credit the lessee with the *total* amount collected. The total mileage earned by the cars exceeded the rental fee and the owner refused to credit the shipper with the excess. The owner argued that the Commission had declared allowances in excess of rental unlawful in its decision in the Refrigerator case, and that the lessor's crediting the shipper with excess funds would make it a party to an illegal rebate. The Supreme Court first remanded the case for consideration by the Commission, General American Tank Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361 (1940), and subsequently affirmed the Commission's ruling that receipt by the shipper of sums in excess of rental would constitute a rebate. El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053 (1946). Since that litigation the standard contract between shipper and lessor provides that the amounts to be credited to the shipper shall not exceed the rental paid by him.

of plants shipping alcohols and solvents is represented by the three companies that furnished evidence as to the former and the two companies that furnished evidence as to the latter. Although the use of specimen figures in determining issues of this sort is essential and has long been approved, see Akron, C. & Y. Ry. Co. v. U. S. (The New England Divisions case), 261 U.S. 184, 196–199, 43 S.Ct. 270, 67 L.Ed. 605 (1923), and perfection in such studies is not attainable, the Commission here had sufficient basis to warrant rejection of the studies.

Since the foregoing is sufficient to support the Commission's action, it is unnecessary for us to consider other grounds stated in the Commission's report.

Injunction denied and complaint dismissed.

So ordered.