**BLACK BALL FREIGHT SERVICE;** Consolidated Freightways Corporation of Delaware; D–C International, Inc.; Garrett Freightlines, Inc.; Navajo Freightlines, Inc.; Pacific Intermountain Express Co.; Western Gillette, Inc.; Riss & Company, Inc.; IML Freight, Inc.; and American Trucking Associations, Inc., Plaintiffs,

Yellow Freight Service et al., Intervening Plaintiffs,

v.

**UNITED STATES** of America and Interstate Commerce Commission, Defendants,

American Farm Lines, Intervening Defendant.

Civ. A. No. 3828.

United States District Court
W. D. Washington, S. D.

March 26, 1969.

Eisenhower, Carlson, Newlands, Reha & Sinnitt, James F. Henriot, Tacoma, Wash., King, Miller, Anderson, Nash & Yerke, Clifford N. Carlsen, Jr., Portland, Or., William B. Adams, Portland, Or., for plaintiffs.

W. H. Ploeger and James E. Nelson, Seattle, Wash., Ed White, Chicago, Ill., for intervening plaintiffs.

John H. D. Wigger, Edwin M. Zimmerman, U. S. Dept. of Justice, Washington, D. C., Charles W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., Fritz R. Kahn, John E. Faulk, Arthur J. Cerra, Robert W. Ginnane, Interstate Commerce Commission, Washington, D. C., for defendants.

Gordon, Honeywell, Malanca, Peterson & Johnson, Tacoma, Wash., Hanson, Fisher, Tumilty, Peterson & Tompkins, Oklahoma City, Okl., for intervening defendant.

Before JERTBERG, Circuit Judge, and BOLDT and GOODWIN, District Judges.

## OPINION

BOLDT, District Judge:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

American Farm Lines (AFL) made an application under the provisions of Section 210a(a) Interstate Commerce Act, 49 U.S.C.A. Section 310a(a) [1] and Ex Parte No. MC–67, Motor Carrier Temporary Authorities, 98 M.C.C. 483, 49 C. F.R. 1131, et seq., to the Interstate Commerce Commission (ICC) for a Temporary Authority to provide single-line motor carrier service. The application appeared in the Federal Register June 8, 1968. The thirty-five motor carrier plaintiffs in this action, twenty-eight intervening rail carrier plaintiffs and many other carriers, protested the application. The Temporary Authorities Board of the Commission (TAB) by or-

der dated July 12, 1968, denied the application. AFL filed a petition for reconsideration, appealing the decision of TAB. Division 1 of ICC, acting as an Appellate Division, by order dated September 3, 1968, vacated the order of denial issued by TAB and granted the application.

Some of the plaintiffs and other carriers filed petitions for reconsideration, which were not authorized by the applicable rule, Ex Parte No. MC–67, Motor Carrier Temporary Authorities, 98 M.C.C. 483, at page 496 (49 C.F.R. 1131.-6), since neither of the conditions authorizing such petitions was present:

"(a) Petitions for reconsideration. —Pursuant to and in accordance with the Commission's General and Special Rules of Practice, petitions for reconsideration of orders of (1) the Temporary Authorities Board, and (2) Division 1 initially granting or denying temporary authority in proceedings not subject to prior determination by the Temporary Authorities Board, may be filed by any interested person."

Plaintiffs' complaint was filed in this court on September 26, 1968, together with a motion for an order to stay the going into effect of the ICC order of September 3, 1968.

This motion was argued October 2, 1968 before Judge Boldt per Title 28, Section 2284(3) and .(5). After considering oral and written evidence and the argument of counsel, the Court entered an order staying the going into effect of the ICC order of September 3, 1968, and declaring it to be otherwise inoperative pending determination in this Court of the issues presented in this proceeding, or until further order of this

[1]. Interstate Commerce Act, Section 210a (a), as amended, 49 U.S.C. 310a(a), provides:

"To enable the provision of service for which there is an *immediate and urgent need* to a point or points within a territory having *no carrier service capable of meeting such need*, the Commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common car-

rier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the Commission shall specify, but for not more than an aggregate of one hundred eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter." (Emphasis added.)

Court. At that hearing, counsel for ICC did not challenge the administrative finality of the ICC order of September 3, 1968. By its order of October 9, 1968, ICC recognized the stay order of this Court.[2]

On October 16, 1968, the Department of Defense filed with ICC a reply to the petitions for reconsideration, and on October 17, 1968, AFL filed a combined reply to the petitions for reconsideration and a petition to reopen. Many plaintiffs filed motions to strike these pleadings on the ground they were not authorized by ICC Rule 49 C.F.R. 1131.6, nor by any other rule.

On November 12, 1968, ICC filed in this court a "Motion to Stay Further Proceedings Herein," stating therein that on November 5, 1968, on its own motion, ICC had reopened the proceeding before it and requested a stay of further action in the case before this court. By their prompt opposition to this motion, plaintiffs contended that ICC was not authorized to reopen its proceeding because this court had taken jurisdiction of the matter. Also, plaintiffs asserted that even if the court had not taken jurisdiction, the ICC Rules precluded reopening of the proceeding. No action has ever been taken to note the ICC motion for hearing or to otherwise procure the stay sought by the motion.

The same contentions were presented to ICC in plaintiff's motion for vacation of the reopening order.

Since the ICC order of November 5, 1968 recited that a verified statement from the Department of Defense would be received, and no ruling having been made on their petitions to vacate the order of November 5, plaintiffs responded to the Caputo verified statement submitted by the Department of Defense. These responses asserted plaintiffs had satisfactorily performed all services previously requested of them and their willingness and ability to perform any service requested of them by any shipper, including the Department of Defense.

On December 19, 1968, ICC issued a new order in the same docket granting AFL the same temporary authority previously granted by the ICC order of September 3, 1968 as to which the stay order of this court was and still is in full effect.

On December 31, 1968, pursuant to Fed.Civ.R. 15(d), plaintiffs filed in this court a "Supplemental Complaint Setting Forth Transactions or Occurrences or Events Which Have Happened Since the Date the Original Complaint was Filed Herein" and a motion to stay the going into effect of the ICC order of December 19, 1968.

Following extended argument, on January 6, 1969 Judge Boldt entered an order restraining the going into effect of the ICC order of December 19, 1968 and ordering it to be inoperative until further order of this court. Full hearing on the merits was heard by the Three-Judge Court on January 24, 1969.

2. "Upon consideration of the record in the above entitled proceedings, and the entry of a temporary restraining order on October 3, 1968, by the United States District Court for the Western District of Washington in Civil Action No. 3828, Black Ball Freight Service, et al v. United States, wherein the Court stated in part:

'IT IS ADJUDGED AND ORDERED that that certain order of the Interstate Commerce Commission issued by it in its Docket MC–129908TA application of American Farm Lines, Oklahoma City, Oklahoma under date of September 3, 1968, be stayed from going into effect or otherwise be inoperative pending

a determination by this Court of the issues of this proceeding, or until the further order of this Court.'

and good cause appearing therefor:

It is ordered, that the effective date and operation of the order heretofore entered September 3, 1968, in No. MC–129908TA be, and it is hereby, postponed until further order of the Commission.

It is further ordered, that in view of the Court's order and of the order of the Commission, American Farm Lines may not now perform any for-hire operations in interstate or foreign commerce pursuant to the Commission's order of September 3, 1968, entered in his proceeding."

The issuance of the ICC order of September 3, 1968 was based on a supporting letter written by the Department of Defense, dated May 15, 1968. The ICC also had before it a letter dated April 30, 1968 written to the president of AFL wherein the Department of Defense stated it was not in a position to verify that there would be insufficient or inadequate service to meet Department requirements in the absence of the single-line service AFL seeks to provide.

"As authorized by the ICC Act, after extended consideration the ICC adopted Temporary Authority Rules, effective July 5, 1965, specifying procedures for the submission and determination of temporary authority applications under Section 210(a), ICC Act. Ex Parte No. MC-67, 49 C.F.R. 1131 * * * The rules specifically provide in mandatory terms that each filed temporary authority application must be accompanied by one or more supporting statements and each such statement must contain at least the information specified in eleven categories." Acme Cartage Co. et al v. United States et al, 290 F.Supp. 453 at page 454. Among those categories are:

"(8) Whether efforts have been made to obtain the service from existing motor, rail or water carriers, and the dates and results of such efforts.

"(9) Names and addresses of existing carriers who have either failed or refused to provide the service, and the reasons given for any such failure or refusal."

The ICC Rules, 49 C.F.R. 1131 et seq., provide for the filing and processing of written temporary authority applications and establish standards and mandatory procedures applicable to all phases of the submission and determination of such applications. Except for supporting statements by the Department of Defense, the rules require "certified" evidentiary statements by the supporting shippers claiming to need the new service, and further require factual statements in a minimum of eleven specific categories. The rules require notice of the proceeding to be given by publication in the Federal Register and authorize protest of the application by "persons who can and will provide all or any part of the proposed service". Each protest must specify the service the protestant can and will offer and must be served upon the applicant. Submission of supplemental data after the applications are filed is not permitted. The ICC rules establish specific evidentiary standards for determination of each application for temporary authority and provide that grants "shall be only made" where the evidence "establishes" an immediate and urgent need in accordance with the prescribed standards.

Rule 49 C.F.R. 1131.4(b) (4) pertaining to single-line service provides:

"Generally, the desire of a shipper for single-line service in lieu of existing interchange or connecting-carrier service will not warrant a grant of temporary authority. A grant of temporary authority to effectuate single-line service will be authorized only when it is clearly established that the carriers providing multiple-line service are not capable of, or have failed in, meeting the reasonable immediate and urgent needs of shippers or receivers between the points or territories and in respect of the commodity or commodities involved."

Plaintiffs assert the initial supporting letter accompanying AFL's temporary application did not provide the information required by 49 C.F.R. 1131.2 (c), particularly (8) and (9) thereof, and that granting of the temporary authority in question without a showing of the required information in effect denied them consideration of their protests. Plaintiffs contend no specific failure of service by plaintiffs has been asserted to which specific response could be made and that their response to generalities could only be met by their general assertions.

In their answer, defendants admit:

"With respect to the allegations contained in the initial complaint, admit that the order of the Commission dated

September 3, 1968 may not have been based upon evidence to support its conclusion."

In their brief, the defendants admit: " * * * That the Commission's order of September 3, 1968 (1) may not have been based upon evidence to support its conclusions." These concessions indicate the ICC itself had strong misgivings concerning its compliance with the rules ICC itself had promulgated.

■ Defendants contend the ICC order dated September 3, 1968 became moot when ICC reopened the proceeding on November 5, 1968. This contention is without merit. Prior to reopening of the proceeding which resulted in the ICC order of September 3, 1968, judicial review of that order had been perfected pursuant to 28 U.S.C. § 1336. Jurisdiction thereof vested in and had been exercised by this court in an extended evidentiary hearing wherein ICC actively participated. Following such hearing the stay order of this court was entered. In these circumstances, without prior leave of court, ICC was without authority to take any action which directly or indirectly might nullify or impair the jurisdiction of this court over the ICC order under review.

Defendants further contend that the ICC order of September 3, 1968 was not administratively final. However, at the oral argument on the merits defendants conceded that plaintiffs were properly in court seeking review of that order.

Plaintiffs assert that the September ICC order was administratively final under the Temporary Authority Rules, 49 C.F.R. 1131.6, and that if those rules do not govern, the general ICC rule, 49 C.F.R. 1100.101(a) (2), is applicable:

"All decisions, orders or requirements of a division of the Commission in any proceeding shall be considered administratively final, except those involving issues of general transportation importance, those wherein the division reverses, changes or modifies a prior decision by a *hearing officer,* and those wherein the initial decision is made by a division." (Emphasis added.)

Indisputably this proceeding did not involve action by a hearing officer, but rather a reversal by ICC Division 1 of a prior determination by its Temporary Authority Board.[3]

Title 28 U.S.C. Section 1336 provides: *"Interstate Commerce Commission's orders.*

(a) Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission."

The Supreme Court stated in Pennsylvania Railroad Company v. United States, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960):

"We decided some years ago that while a mere 'abstract declaration' on some issue by the Commission may not be judicially reviewable, an order that determines a 'right or obligation' so that 'legal consequences' will flow from it is reviewable. Rochester Telephone Corp. v. United States, 307 U.S. 125, 131, 132, 143, [59 S.Ct. 754, 757, 763] 83 L.Ed. 1147 [1152, 1153, 1159]."

And further:

"We have held that judicial review is equally available whether a Commission order relates to past or future rates, or whether its proceeding follows referral by a court or originates with the Commission. El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053."

In Inland Steel Co. v. United States, 306 U.S. 153, 59 S.Ct. 415, 83 L.Ed. 557 (1939), the Court stated:

*"Third.* The appellant takes the position that the Commission's purported

---

3. The disposition of an application by a Board does not constitute a hearing before a hearing officer. Compare Trans-

American Freight Lines, Inc. v. United States, 258 F.Supp. 910 (1966).

postponement of its command to cease and desist (eighteen months after the interlocutory injunction was granted) deprived the Court of authority to enforce the conditions of its interlocutory injunction. However, since the court had exercised jurisdiction to review and suspend the Commission's report and order, the administrative body was without power to act inconsistently with the Court's jurisdiction, had it attempted to do so. * * * "

Defendants do not dispute the fact that the ICC order of September 3, 1968 was a final grant of temporary authority to AFL to engage in operations thereunder, subject only to compliance with tariff requirements, and that the order was at that time reviewable by a three-judge court. Defendants have cited several cases [4] in support of their argument that the ICC retains "continuing jurisdiction over its orders at all times." However, none of the cases deals with the question now presented, i. e. whether, after a court has review jurisdiction of an ICC order and a stay of that order has been entered by the court, the ICC may nullify the review and the stay order by reopening the ICC proceedings. The ICC itself has answered this question in Central Freight Lines, Inc. v. Strickland Transportation Lines, Inc., 102 M.C.C. 291.

"* * * Moreover, when the Court has exercised jurisdiction to review and suspend a report and order of the Commission, we are without power to act inconsistently * * * "

Even if ICC had jurisdiction to reopen the ICC proceeding and to consider the Caputo verified statement, it would not meet the requirements of categories (8) and (9) of ICC Rule 49 C.F.R. 1131.2(c).

The Caputo verified statement fails to show any efforts by the Department of Defense to obtain from existing carriers the service AFL seeks to provide, or the identity of any existing carriers who failed or refused to provide the needed service and the reasons given for any such failure or refusal. Statement of these matters is mandatorily required by categories (8) and (9).

At best, the Caputo verified statement merely states the Department of Defense preference for the continuance of AFL's service and the expansion of that service into single-line service. AFL has been performing service for the Department of Defense under the provisions of 49 U.S.C. § 303(b) (5), but no issue pertaining to that service is now before this court. The fact that the Department of Defense may desire a new or expanded type of service by a particular carrier does not justify the granting of temporary authority to provide such service without full compliance with all mandatory ICC rules.

While under 49 U.S.C. § 310a (a) the ICC is vested with wide discretion to grant temporary authority for motor carrier services, it may only do so when both conditions specified in the statute are shown to exist, i. e. (1) "an immediate and urgent need" for service, (2) "within a territory having no carrier service capable of meeting such need." It is clear from the language of the statute that in the absence of either one or both of the conditions specified, ICC "has neither power nor discretion to grant temporary authority applications. * * * Variable and unpredictable enforcement of important and mandatorily stated rule provisions is inequitable in principle and unsound in practice." Acme Cartage Co.

4. Aberdeen & Rockfish RR v. United States, 270 F.Supp. 695 (E.D.La.1937), Affirmed as Modified Baltimore & O. R. Co. v. Aberdeen & Rockfish R. Co., 393 U. S. 87, 89 S.Ct. 280, 21 L.Ed.2d 219 (1968); Alamo Express, Inc. v. United States, 239 F.Supp. 694 (W.D.Tex.1965), Affirmed 382 U.S. 19, 86 S.Ct. 83, 15 L. Ed.2d 14 (1965); Donaldson v. Read Magazine, 333 U.S. 178, 68 S.Ct. 591,

92 L.Ed. 628 (1948); United States v. Chicago, Milwaukee, St. Paul and Pacific Railroad Company, 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023 (1935); Anchor Line Limited v. Federal Maritime Commission, 112 U.S.App.D.C. 40, 299 F.2d 124 (Ct. of Appeals, D.C.1962); Atchison, Topeka and Santa Fe Railroad Company v. United States, 231 F.Supp. 422 (N.D.Ill.E.D.1964).

**1012**

v. United States, supra, 290 F.Supp. at 456–457.

The court's Findings of Fact and Conclusions of Law are hereby found and held as stated in the foregoing Opinion.

For the reasons stated, we find that the granting of each Temporary Authority referred to in the foregoing Opinion was arbitrary, capricious and erroneous in law. Accordingly, each of the Temporary Authorities should be and hereby is held null and void. The stay order as to each Temporary Authority is continued in effect until further order of this court.